DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRANDON S. HEGELE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-835

[June 26, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 502016CF007976AMB.

Steven H. Malone of Steven H. Malone, P.A., West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Brandon Hegele, formerly a deputy sheriff with the Palm Beach County Sheriff's Office, appeals from his conviction for reckless driving causing serious bodily injury to another. Hegele raises several issues on appeal, but we write to address only his argument that the trial court improperly instructed the jury that law enforcement officers are not relieved from the duty to drive with "due regard" for the safety of all persons. On that argument and all other arguments raised, we affirm.

**Background**

Hegele was on duty at the time of the crash in a marked patrol car. In response to an earlier "be on the lookout" (BOLO) alert, he was looking for a vehicle suspected of involvement in a felony incident in another jurisdiction. At the time of the collision, Hegele was traveling over 100

miles per hour[1]—more than double the posted speed limit—with no lights or siren, in the middle of the day, on a major roadway (Southern Boulevard in Palm Beach County), after his supervisors had given orders to "hang back" and "break it off." As a result of the accident, which was captured on Hegele's dashboard camera, the driver of the other car, Harry Deshommes, suffered serious injuries.

Based on this incident, the State charged Hegele with reckless driving causing serious bodily injury. The case went to trial. Hegele's defense was that Mr. Deshommes was a distracted driver and caused the accident by entering Hegele's lane of travel without signaling. Defense counsel also maintained in opening statements that, at the time of the accident, "Deputy Sheriff Brandon Hegele was doing his job . . . ." He "was one of a group of deputies who was out looking for a car full of criminals . . . who had committed felonies in Palm Beach County." The defense continued: "And in doing his job, now Brandon Hegele is being prosecuted for something that's not his fault."

During the charge conference, the State argued that these opening remarks by the defense, and the unique facts of the case, necessitated a special instruction in addition to the standard instructions. Over defense objection, the State proposed a special instruction consistent with state statutes addressing the ability of emergency vehicles to breach traffic laws during emergencies. *See* §§ 316.072(5)(c) & 316.126(5), Fla. Stat. (2016) (both providing that, regardless of the emergency, the driver of an authorized emergency vehicle is not relieved "from the duty to drive with *due regard* for the safety of all persons") (emphasis added)).

The State initially proposed to include two paragraphs, the first of which included statutory language regarding other drivers moving over for emergency vehicles. At defense counsel's request, the State quickly agreed to remove the first paragraph. With respect to the remainder of the proposed instruction, the prosecutor asserted:

> [T]he State's position is that it's relevant because the defendant disregarded [the supervisors' radio commands] and continued to act as if he's going to an existing emergency and drive in a fashion as such which I think the jury should know what the law says. . . . Whether [an emergency] actually existed or not, they should be instructed on what is required

---

[1] Five seconds before the crash, Hegele's vehicle was traveling at 103 miles per hour, and maintained a speed of 101-104 miles per hour until one second prior to the crash.

of a law enforcement officer in the State of Florida. . . .
[B]ecause otherwise they may say maybe he's allowed to do
this. What if they go back in the jury room and think that? .
. . Because their opening statement which I expect will wrap
to a question is he's basically doing the right thing and
pursuing a criminal[;] these bad criminals is how it was
termed in opening. So my fear is that the jury is going to go
back in the jury room and think well, is he allowed to drive
like this? He's in a marked patrol unit. Is he allowed to drive
this way? And the answer is no. And he shouldn't get a jury
pardon because they're improperly instructed or don't receive
enough instruction to understand what the law requires.

The trial court agreed that a special instruction was necessary
considering the unique facts of the case; however, as the transcript
reflects, the court also was concerned about properly wording the
instruction, so as not to impose an extra burden on the defendant. At one
point, the court stated:

Well, the bottom line is that the standard instructions need to
be said. The standard instructions for reckless driving, the
serious bodily injury did not contemplate a situation where a
police officer is on duty during that time period. So[,] I mean
you would agree that a police officer -- there might be some
question in the jury's mind as to what a police officer can and
cannot do and are they permitted to drive in this sort of
manner, or are they not permitted to drive in this sort of
manner. I think there's that question. So[,] we have to
instruct them in some way, I'm not saying by this, but in some
way so this they can understand otherwise this is a very
specific type of circumstance. This is not a typical reckless
driving and serious bodily injury. Wouldn't you agree?
Defense? No. Okay. So[,] I think that the jury needs to know
in some way. They need an understanding as to -- because
what if they come back and they say well, is a police officer
allowed to drive in this type of -- in a certain type of manner
while they're on duty? I mean, this would be a different
situation if it was a police officer not on duty. A different
situation if they were in an unmarked car and it was not
dealing with the on-duty situation. I don't know.

After further discussion, the trial court concluded: "This is the bottom
line. I don't think we can be silent about the -- because the jury is going
to come back with this question. Can a police officer -- what can a police

officer do when they're on duty in terms of traffic laws?  And we're not going to be able to answer that question.  Do you see what I'm saying?"  Defense counsel responded: "I do."  The court ultimately decided "to [go] with the due regard language," and instruct the jury that "[a]n on duty police officer is required to drive with due regard for the safety of all persons using the highway."[2]  The defense acknowledged, "[w]ithout waiving any objection, that this is a concise statement of the law."

The special instruction was given at the end of both the instructions on the charged offense and the lesser included offense of reckless driving.

In closing argument, defense counsel acknowledged that Hegele was speeding, but maintained that the video showed "[h]e has due regard for the welfare of the people on the road . . . ."  In its closing, the State set out the elements it needed to prove beyond a reasonable doubt, before adding: "in the instructions that the judge gave you, it says that an on-duty police officer is required to drive with due regard for the safety of all persons using the highway.  He doesn't get to hide behind the badge.  He has to drive with due care and he failed miserably."

The jury found Hegele guilty as charged.  The trial court withheld adjudication and sentenced him to five years of probation with a special condition of 364 days in county jail.  In his motions for new trial, Hegele argued that the special instruction confused the jury and imposed a duty on police officers inconsistent with the standard jury instruction.  Hegele's motions for new trial were denied.  This appeal followed.

## Analysis

Hegele argues on appeal that the trial court erred by giving the special jury instruction, because the instruction allowed the jury to find Hegele guilty on a standard less than that of recklessness.  The State responds that the court properly found the standard instructions inadequate in their failure to address how the reckless driving statute applies to an on-duty police officer.  The State further contends that the special instruction does not impose a duty different from the one set forth in the reckless driving statute.

"[A] trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed with a

---

[2] *See* § 316.126(5), Fla. Stat. (2016) ("This section does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.").

4

presumption of correctness on appeal." *Carpenter v. State*, 785 So. 2d 1182, 1199-1200 (Fla. 2001). "In that regard, a trial judge in a criminal case is not constrained to give only those instructions that are contained in the Florida Standard Jury Instructions." *Id.* at 1200. However, "[j]ury instructions must relate to issues concerning evidence received at trial," and "the court should not give instructions which are confusing, contradictory, or misleading." *Butler v. State*, 493 So. 2d 451, 452 (Fla. 1986) (internal citations omitted).

In analyzing the special instruction given in this case, we determine that the trial court did not abuse its discretion in giving the instruction.

The special instruction was related to the evidence presented. It was undisputed that Hegele was an on-duty police officer at the time of the crash, and that he was traveling over twice the posted speed limit. An eyewitness also testified that he believed the officer must have been "on a call, or . . . in a hurry to get to somewhere." Additionally, the lead investigator testified without objection that the statutes governing emergency vehicles "do [not] relieve the driver [even if law enforcement] from their duties of doing it safely, so as not to endanger anyone else or themselves." While the facts did not show that the defendant was en route to meet an existing emergency, the defense suggested that, while on duty, the defendant was justified in driving at such high speed.

The special instruction was not confusing, contradictory, or misleading. "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citation and internal quotation marks omitted). Here, the jury was instructed on the elements of the crime charged and informed that it was the State's burden to prove each element. The special instruction followed. In context, this instruction did not lessen the standard of proof or provide an alternative basis for establishing guilt, as Hegele submits, but simply informed the jury that on-duty police officers cannot disregard the safety of other drivers.

## Conclusion

We have reviewed the charge conference and instructions given to the jury in the context of the entire trial. We find no error—let alone, harmful error. A police officer, even when responding to an emergency, must drive with due regard for the safety of other drivers. Driving at over double the posted speed limit, in less exigent circumstances, without use of lights or siren, does not meet the "due regard" standard. Accordingly, we affirm Hegele's conviction for reckless driving causing serious bodily injury to

5

another.

*Affirmed.*

WARNER and KUNTZ, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**